IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| KIRBY INLAND MARINE, LP | * | Civil Action No. |
| | * | 3:19cv207 |
| *Plaintiff*, | * | |
| | * | |
| V. | * | |
| | * | |
| FPG SHIPHOLDING PANAMA 47 S.A., K | * | |
| LINE ENERGY SHIP MANAGEMENT, and | * | |
| the VLGC GENESIS RIVER, *in rem* | * | |
| | * | |
| *Defendants.* | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| IN THE MATTER OF | Rule 9(h) Admiralty |
| KIRBY INLAND MARINE, LP, | |
| in a cause of exoneration from | Non-Jury |
| or limitation of liability | |

* * * * * * * * * * * * * * * * *

<u>*Consolidated with*</u>

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT OF | * | C.A. NO. 3:19-cv-372 |
| FPG SHIPHOLDING PANAMA 47 S.A., | * | Admiralty -- Rule 9(h) |
| SHIP NO. 138 CO. LTD., SHIP NO. 139 CO. | * | |
| LTD., GENESIS RIVER SHIPPING, S.A. AND | * | |
| "K" LINE ENERGY SHIP MANAGEMENT | * | |
| CO., LTD., AS OWNER AND OWNER PRO | * | |
| HAC VICE OF THE VLGC GENESIS RIVER | * | |
| PETITIONING FOR EXONERATION FROM | * | |
| OR LIMITATION OF LIABILITY | * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF CLAIMANTS' CONTESTED
MOTION IN LIMINE TO EXCLUDE THE EXPERT TESTIMONY OF DR.
BENJAMIN CORD HARRIS**

NOW INTO COURT, come liaison counsel for the OPA Claimants, who file

this memorandum in support of the Contested Motion in Limine to Exclude the

Expert Testimony of Dr. Benjamin Cord Harris, and, pursuant to Federal Rule of Evidence Rule 702, respectfully move this Honorable Court to exclude any testimony of Genesis River's expert witness, Dr. Benjamin Cord Harris.

## I.   INTRODUCTION

OPA Claimants respectfully submit this motion *in limine* to exclude testimony of Genesis River's expert witness, Dr. Benjamin Cord Harris, pursuant to Federal Rule of Evidence 702 ("FRE") for failure to comply with the requirements promulgated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[1]  On July 9, 2021, Genesis River produced the expert report of Dr. Benjamin Cord Harris.  The report contains numerous assumptions by Dr. Harris regarding the impacts of the subject reformate spill upon aquatic life in Galveston Bay.  On October 28, 2021, Dr. Harris was deposed and acknowledged that he was unaware of specific data and information regarding the evaporation of reformate, the life cycles of aquatic life in Galveston Bay, the specific conditions which would harm aquatic life, and the actual impacts of the reformate spill on aquatic life in Galveston Bay.  Dr. Harris's report is void of any data or analysis regarding aquatic life in Galveston Bay.  Further, Dr. Harris's report contains no methodologies by which to calculate his opinions.  Lacking such analysis the proposed opinion fails to comply with *Daubert's* requirement that an expert's opinion be reliable.

---

[1]   509 U.S. 579, 589 (1993).

**II.    FACTS**

On May 10, 2019, the subject collision occurred between the VLGC Genesis River and the tank barges in tow with the Kirby Voyager resulting in the release of reformate into Galveston Bay. This Honorable Court has previously determined that Genesis River is 100% at fault for the collision.[2] Following the collision, numerous OPA Claimant made claims against Genesis River for damages and losses resulting to the seafood resources and seafood industry in Galveston Bay.

Genesis River retained Dr. Benjamin Cord Harris of Ramboll US Consulting to assess the impacts of the reformate spill upon the aquatic life in Galveston Bay. On July 9, 2021, Dr. Harris produced an expert report summarizing his opinions.[3] Dr. Harris's opinions are: (1) the reformate evaporated quickly and thereafter dissolved from the water column, and (2) the limited impacts of the reformate spill did not have a significant impact on the shrimp, oyster, and fish populations in Galveston Bay. Dr. Harris's opinions are conclusory in nature and are not based upon any data collection or quantitative analysis. Additionally, Dr. Harris's opinions do not rely upon any methodologies which satisfy the *Daubert* requirements to permit the introduction of Dr. Harris's opinions at trial in this matter.

---

2    See. Rec. Doc. 588.
3    A copy of Dr. Harris's expert report is attached hereto as Exhibit A.

On October 28, 2021, Dr. Harris sat for a deposition.[4] During his deposition Dr. Harris acknowledged that he collected no water samples from Galveston Bay.[5] Further, Dr. Harris did not examine any oysters, shrimp, crabs, fish or other aquatic life in Galveston Bay.[6] Instead, Dr. Harris only relied upon the fish kills located upon the beaches of Galveston Bay, which were collected by third parties.[7] In addition to the lack of any samples, Dr. Harris acknowledged that he is unaware of the reproductive cycles of oysters[8] or shrimp.[9] Dr. Harris also admitted that he was unaware of the level of concentration reformate which are hazardous to oysters and shrimp.[10] Further, Dr. Harris admitted that he had not examined any landing data or harvest data from seafood harvesters in Galveston Bay.[11] Dr. Harris also acknowledged that he was unaware of the levels of low salinity necessary for a mortality event for oysters and shrimp.[12] Finally, Dr. Harris admitted that he was unaware of any impact of the reformate spill on the recruitment stock for oysters, shrimp and crab in Galveston Bay.[13]

---

4   A copy of the October 28, 2021 deposition transcript of Dr. Cord Harris is attached hereto as Exhibit B.
5   See Exhibit B, pg. 15, ln. 2-7.
6   *Id*. at pg. 18, ln. 5-14.
7   *Id*. at pgs. 16-17.
8   *Id*. at pgs. 23-24, ln. 3-11 and, pg. 55, ln. 18-21.
9   *Id*. at pgs. 25-26, ln. 19-1.
10  *Id*. at pg. 33, ln. 4-13 and pg. 37, ln. 23-25.
11  *Id*. at. pgs. 34-35, ln. 25-17 ad pgs. 68-69, ln. 24-11.
12  *Id*. at. pg. 41, ln. 5-7, pg. 43, ln. 4-6, pg. 51, ln. 19-21, and pgs. 67-68, ln. 21-6.
13  *Id*. at pg. 64, ln. 1-10.

Dr. Harris's report and deposition confirm that his opinions are conclusory and are not based upon any objective data, upon which any methodology can be applied. As a result, Dr. Harris's opinions cannot satisfy the requirement s of *Daubert*.

### III. LAW AND ARGUMENT

#### A. Dr. Harris's Proposed Testimony Fails To Meet *Daubert* Requirements

Expert testimony is only admissible if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[14] The trial court is charged with a "gatekeeping" role to ensure expert testimony is reliable.[15] The proponent of expert testimony has the burden of proving, by a preponderance of the evidence, that the expert's opinions are reliable.[16]

In executing its gatekeeping role, the trial court must make certain that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[17] The court must also "evaluate the methods, analysis, and principles relied upon" by the expert in reaching

---

14 Fed. R. Evid. 702.
15 *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993).
16 See *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).
17 *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999).

his conclusions.[18] An expert's opinions "must be more than mere 'subjective belief or unsupported speculation.'"[19]

Dr. Harris's expert report wholly fails to meet the requirements of *Daubert*. It does not contain sufficient data to allow this Honorable Court to understand, much less to evaluate, the conclusions found by Dr. Harris. Dr. Harris's conclusions regarding evaporation of the reformate do not contain any quantitative data which can be applied to any verifiable methodology. Instead, Dr. Harris's opinions regarding evaporation of the reformate are conclusory. Likewise, Dr. Harris is unqualified to examine and opine about the aquatic life in Galveston Bay. Dr. Harris acknowledges that he is unfamiliar with the life cycles of oysters and shrimp and the contamination and salinities necessary to impact such wildlife. Additionally, Dr. Harris did not collect any wildlife samples or examine any harvest data. Without such data, Dr. Harris's opinions again fail to satisfy the *Daubert* requirements that his opinion be based upon facts and data applied to a reliable methodology.

The proposed testimony of Dr. Harris and any testimony based upon his report must be excluded from trial in this matter for failing to satisfy the requirements of *Daubert*.

---

18   *Watkins v. Telsmith*, 121 F.3d 984, 991 (5th Cir. 1997).
19   *Garcia v. BRK Brands, Inc.*, 266 F. Supp. 2d 566, 573 (S.D. Tex. 2003) (quoting *Daubert*, 509 U.S. at 590).

## IV. CONCLUSION

*Daubert* requires expert testimony to be based upon facts and data, which are applied to reliable methodologies. The opinions of Dr. Harris are neither based upon facts and data, nor applied to any methodologies. Instead, Dr. Harris's opinions are conclusory opinions, which cannot be measured against any reliable scientific methodology. As a result, this Honorable Court should grant the Contested Motion in Limine to Exclude the Expert Testimony of Dr. Benjamin Cord Harris and exclude any testimony by Dr. Harris at the trial in this matter.

Respectfully submitted,

PIVACH, PIVACH, HUFFT,
THRIFFILEY & DUNBAR, L.L.C.
ATTORNEYS AT LAW

By: /s/ *Corey E. Dunbar*
COREY E. DUNBAR
(Texas Bar No. 24076801)
8311 Highway 23, Suite 104
Post Office Box 7125
Belle Chasse, LA 70037
Telephone: (504) 394-1870
Facsimile: (504) 393-2553
cdunbar@pivachlaw.com
LIAISON COUNSEL on behalf of all claimants

and

By: */s/ William Dills (by permission)*
Terry Joseph
William "Billy" Dills
S.D. Bar No. 2346498
State Bar No. 24067421
D. Ryan Cordell, Jr.
State Bar No. 24109754
MATTHEWS, LAWSON, MCCUTCHEON &
JOSEPH PLLC
2000 Bering Dr., Suite 700
Houston, Texas 77057
Telephone: (713) 355-4200
Facsimile: (713) 355-9689
WDills@matthewsfirm.com
tjoseph@matthewsfirm.com
dcordel@matthewsfirm.com
LIAISON COUNSEL on behalf of all claimants

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record, who are deemed to have consented to electronic service in the above-referenced case, are being served this 9th day of December, 2021 with a copy of the above document via the court's CM/ECF System per Local Rule 5.1.

*Corey E. Dunbar*
COREY E. DUNBAR